O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | | |
|---|---|---|
| ELIZABETH JIMENEZ | ) | Case No. CV 06-01145-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**I.    Background**

Plaintiff Teresa Bishop seeks review of the Defendant Commissioner's final decision denying her application for Supplemental Security Disability Insurance Benefits ("SSDI"). For the reasons stated below, this matter is remanded to the Commissioner for further proceedings.

Plaintiff filed for SSDI benefits on February 6, 2003, when she was forty-five years old, claiming that she has been disabled and unable to work since July 22, 1992 due to post-surgical back and knee pain; anemia; and depression. (AR 128.) Plaintiff has a high school education

and attended two years of college. She has worked as a nurse and medical office manager. (AR 141, 146.) Plaintiff was insured for disability benefits through December 31, 2000.[1] (Joint Stipulation ("JS") at 2.)

Plaintiff's application for benefits was denied initially and upon reconsideration. (AR 82-85, 88-91.)  An administrative hearing was held November 17, 2004 before Administrative Law Judge ("ALJ") Helen E. Hesse. (AR 48.) In a decision issued on March 11, 2005, the ALJ found that although each of the back and knee surgeries performed on Plaintiff left her severely impaired, she was not disabled, as defined in the Social Security Act, at any time during the relative time period. (AR 60-61.)  The ALJ found that Plaintiff's allegations of pain and limitations were not credible and that Plaintiff's residual functional capacity did not preclude her from performing her past relevant work as a medical assistant during the period at issue. (Id.) Plaintiff's request for review was denied by Appeals Council on December 22, 2005. (AR 6-10.)

Because both parties are familiar with Plaintiff's lengthy medical history, the Court will only provide a brief summary of the relevant medical records.[2] Plaintiff first injured her back in February of 1986

---

[1]  In order to qualify for disability insurance benefits, Plaintiff is required to establish that she was disabled on or before the date of termination of her insured status.  20 C.F.R. §404.131(b)(1); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984). Plaintiff was therefore required to establish that she was disabled on or before December 31, 2000 in order to be eligible for disability benefits.

[2]  Plaintiff was treated by at least thirty-five physicians during the time period at issue. (AR 708-29.) The summary that follows is taken primarily from the medical reports of orthopedic surgeon Dr. Gil Tepper, who performed all of the surgeries on Plaintiff. As discussed below, only Plaintiff's orthopedic impairments are relevant to this Court's decision. Plaintiff also allegedly suffers from other physical and

while stacking supplies.   She re-injured her lower back in April of 1991, while lifting and stacking storage boxes, and again on May 15, 1991, when she turned in her chair at a staff meeting while holding a stack of papers.

A MRI of the lumbar spine on July 1, 1992, revealed "moderate midline disc bulge seen at L2-3" and "mild desiccation and midline disc bulge seen at L5-S1." (AR 709-10.) The condition of Plaintiff's lumbar spine continued to worsen, eventually leading to back surgery on February 22, 1994.[3] (AR 610.)

In June of 1993, Plaintiff fell and landed on her knees on a cement floor, and she began to complain of pain in both of her knees. A MRI performed on Plaintiff's left knee in October of 1994 revealed a medial meniscus tear. (AR 533.) Left and right knee surgeries were performed on December 9, 1994,[4] and July 5, 1995,[5] respectively. (AR 601, 606.) Plaintiff continued to experience "mechanical symptoms, recurrent effusions, buckling, catching, and giving-way episodes" with her right

---

mental impairments that do not require discussion.

   [3]   The lumbar surgery included the following procedures: 1. Micro laminotomy and diskectomy, L2/3 on the right. 2. L5/S1 laminectomy, Gill procedure. 3. Total diskectomy posterior lumbar inner body fusion. 4. Neurolysis of the L5 and S1 nerve roots bilaterally. 5. Posterior lumbar inner body fusion using allograft.

   [4]   The following procedures were performed: 1.Left knee chondroplasty, medial patellar facet. 2. Chondroplasty, lateral tibial plateau.

   [5]   The following procedures were performed: 1. Right knee arthroscopic chondroplasty, medial patellar facet and medial femoral condyle. 2. Extensive plica resection and synovectomy.

1  knee, and a second surgery was performed on August 26, 1997.[6] (AR 596.)
2  A second left knee surgery was performed on February 15, 2000.[7] (AR 589.)

3      On November 22, 1994, Plaintiff reported that she fell and struck
4  her right shoulder, and was experiencing shoulder pain. Dr. Tepper
5  diagnosed Plaintiff with grade I acromioclavicular ligament strain of
6  the right shoulder. (AR 529.)

7      Plaintiff subsequently complained[8] of pain in her neck, shoulders,
8  and between her shoulder blades, and a MRI of the cervical spine
9  performed on April 5, 1996 revealed "[c]entral 3mm C5-C6 disc herniation
10  with left neural foraminal narrowing." (AR 508, 511.) Plaintiff was
11  eventually diagnosed with C4-5 and C5-6 disc herniation with central and
12  lateral cervical canal stenosis with kyphosis and segmental instability.
13  (AR 591.) Plaintiff underwent cervical spine surgery on March 25, 1999.[9]
14  (Id.)

15

16  _____

17      [6]  The following procedures were performed: 1. Right knee
    arthroscopic chondroplasty, weightbearing dome, medial femoral condyle.
18  2. Right knee arthroscopic chondroplasty, trochlea. 3. Right knee
    arthroscopic removal of loose bodies.

19      [7]  The following procedures were performed: 1. Left knee
    arthroscopic chondroplasty, medial femoral condyle and patella. 2. Left
20  knee arthroscopic removal of loose bodies. 3. Synovectomy and resection
21  of plica.

22      [8]  There is a gap in the records from Dr. Tepper between March 16,
    1995, and April 28, 1996. Plaintiff did not complain of neck pain at her
23  March 16, 1995 examination, and a MRI of the cervical spine was
    performed on April 5, 1996.  Plaintiff's pain presumably began at some
24  point between those two dates.

25      [9]  The following procedures were performed: 1. Anterior partial
    vertebrectomy, C4 and C5. 2. Anterior total nuclear diskectomy, C4-5 and
26  C5-6. 3. Anterior interbody fusion, C4-5 and C5-6. 4. Open reduction
    with internal fixation, C4-5 and C5-6. 5. Bilateral foraminotomy and
27  neurolysis of the exiting C-6 nerve roots under microscope. 6. Allograft
    shaping. 7. Autologous bone harvest. 8. Continuous intraoperative spinal
28  cord evoked potential monitoring.

Plaintiff now seeks review of the Commissioner's final decision denying benefits. Plaintiff raises four claims of error: 1) the ALJ improperly rejected the uncontroverted treating physicians' reports; 2) the ALJ improperly rejected Plaintiff's credibility and testimony concerning her pain; 3) the ALJ failed to consider all of Plaintiff's impairments in combination; and 4) the ALJ improperly limited cross-examination of the medical expert by Plaintiff's attorney. Because this Court finds that remand is appropriate on Plaintiff's second claim, the Court will not address Plaintiff's other claims of error.

## II.  Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if "if it is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. 389, 401 (1971); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). It is more than a scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-721. \\

**III. Credibility of Plaintiff's Pain Testimony**

Plaintiff claims that the ALJ erred by improperly discrediting her subjective complaints of pain and associated physical limitations. (Jt. Stip. 15-16.) "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to alleged pain is reasonably consistent with the objective medical evidence and other evidence in the case, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186 at *2 (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).[10] Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting a claimant's complaints. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Social Security Regulation 96-7p explains what types of evidence may be used, in addition to the objective medical evidence, to assess a claimant's credibility.[11] For example, an ALJ may discredit a claimant's

---

[10]     "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy....Although SSRs are not published in the federal register and do not have the force of law, [the Ninth Circuit] nevertheless give[s] deference to the Secretary's interpretation of its regulations." *Bunnell*, 947 F.2d at 346 n.3.

[11]     SSR 96-7p lists seven types of evidence:
1.     The individual's daily activities;
2.     The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.     Factors that precipitate and aggravate the symptoms;
4.     The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

testimony if she engages in daily activities that are inconsistent with her allegations. *Bunnell*, 947 F.2d at 346. "Another relevant factor may be 'unexplained or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'" *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ may also use "ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (internal quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)).

At the hearing before the ALJ, Plaintiff testified about the type and severity of physical pain she experienced during the relevant time period, and the physical limitations imposed by such pain. (AR 1030-41.) Plaintiff testified that during and since the relevant time period, she has been experiencing painful swelling, popping, and grinding, in her knees; that she is not able to walk for more than ten minutes, or sit or stand for an hour, without experiencing pain in her knees; that she experiences constant pain in her thoracic spine that extends to the middle of her chest, the severity of which she rated as a six on a scale

---

5.  Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6.  Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7.  Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

of one to ten; that she experiences lower back pain that she would rate at eight out of ten, even after the lumbar surgery; that ever since the initial injury in 1991, she experiences numbness and tingling in both legs; that she experiences neck pain and severe headaches on a nearly daily basis, which affects her ability to concentrate; and that the injury to her right shoulder limits her ability to lift, reach, comb her hair, or fold clothes.[12]

In light of the medical record, the ALJ "credit[ed] the claimant's allegations of disabling pain and limitations through December 31, 2000 to the extent that she was then precluded from performing heavy and medium exertional work," but "reject[ed] her contention that she could not perform light or sedentary work during that period...." (AR 57.) The ALJ based her finding on "the opinion of the medical expert and medical evidence...showing that the claimant experienced good healing demonstrated on MRI scans and x-ray reports of her injuries...." (Id.) The ALJ specifically referenced Dr. Tepper's reports following Plaintiff's 1994 lumbar surgery, in which Dr. Tepper repeatedly found "increasing consolidation of the fusion process," i.e., that there were no complications with the procedure. (AR 52.) A MRI following Plaintiff's 1999 cervical surgery also revealed no complications, as corroborated by the testimony of medical expert Joseph E. Jensen, M.D. (AR 621, 1025.)  The ALJ ultimately concluded that Plaintiff "was capable of performing substantial gainful activities for months at a time in all years pertinent to this claim." (AR 57.)

---

[12]  Plaintiff also testified briefly that she suffers from irritable bowel syndrome, anemia, and severe depression.  The ALJ discredited her testimony concerning the extent to which these ailments affect her ability to function, which Plaintiff does not challenge.

Plaintiff has met her burden of producing objective medical evidence of underlying impairments that are reasonably likely to be the cause of the alleged pain, thereby satisfying the threshold issue required by *Bunnell*. As *Bunnell* makes clear, once a claimant has produced evidence of an underlying impairment—which Plaintiff has as to her lumbar spine, cervical spine, right shoulder, and both knees—the ALJ "may not discredit the claimant's allegations of the severity of pain solely on the ground that the allegations are unsupported by objective evidence."  947 F.2d at 343.

The ALJ stated that she found Plaintiff's testimony not credible based on the factors in SSR 96-7p, but failed to specifically apply those factors. The ALJ's lone rationale for discrediting Plaintiff's complaints of pain is that each surgery was successful. The medical evidence of Plaintiff's successful post-surgery healing is relevant to determining the severity of a claimant's pain and its disabling effects, but it may not provide the sole ground for discrediting Plaintiff's testimony. 20 C.F.R. § 404.1529(c)(2); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). There is no evidence that successful surgical fusion or knee surgeries necessarily alleviated all pain. The absence of any complications following each of Plaintiff's surgeries may not, on its own, serve as a basis to discredit Plaintiff's complaints. *See Vasque v. Barnhart*, 2002 U.S. Dist. LEXIS 14933, *37 (N.D. Cal. Aug. 13, 2002) ("even if Claimant's surgery were [sic] completely successful, that, by itself, still would not be a legitimate reason to discredit the credibility of Claimant's subjective complaints") (citing *Bunnell*, 947 F.2d at 343).

Moreover, some of the underlying impairments existed well before Plaintiff underwent surgery. For example, Plaintiff's lumbar back pain

9

began prior to the claimed disability date of July 22, 1992, but she did not have surgery until February 22, 1994. And a MRI of the cervical spine performed on April 15, 1996, revealed an objective medical basis for Plaintiff's complaints of neck, shoulder, and chest pain, but Plaintiff did not undergo cervical spine surgery until March 25, 1999. The technical success of Plaintiff's surgery is irrelevant to whether Plaintiff's pre-surgery impairments were disabling.[13]

The ALJ failed to give clear and convincing reasons for rejecting Plaintiff's allegations of pain, and remand is therefore warranted.

**IV.  Conclusion**

For the reasons stated above, the Court concludes that the ALJ erred by failing to provide a legally sufficient basis for discrediting Plaintiff's allegations of pain and the physical limitations it imposes.

Accordingly, **IT IS ORDERED** that this matter be **REMANDED** to the defendant Commissioner for the specific purpose of evaluating Plaintiff's allegations of disabling pain and associated limitations in accordance with *Bunnell*, the governing regulations, and SSR 96-7p.

DATED:  December 20, 2006

_____
MARC L. GOLDMAN
United States Magistrate Judge

---

[13]   The ALJ also stated that Plaintiff's injuries and surgeries "would have required some disability time prior to and after each surgery." (AR 57.) The Court was unable to discern from the ALJ's decision any clear and convincing reasons why the respective periods of disability did not last for the twelve-month period that is required to qualify for benefits. 20 C.F.R. § 404.1509.